UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Teachers Insurance and Annuity Association of America, a New York corporation, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Mall of America Associates, a Minnesota general partnership, et al.,<br><br>Defendants. | Civil No. 06-1062 (PAM/JSM)<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Triple Five of Minnesota, Inc.'s Motion to Toll the 120-Day "Buy-Sell" Evaluation Period. For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

This case arises from the potential sale of interest in the Mall of America and involves the rulings of this Court in a related proceeding, Triple Five of Minnesota, Inc. v. Melvin Simon et al., Civil No. 99-1894 (PAM/RLE). Because of those rulings, the parties seek declarations in this case regarding the rights and legal relations of the parties in the potential sale.

**A.     The Parties**

Plaintiffs are Teachers Insurance and Annuity Association of America ("TIAA"), and three of its wholly-owed subsidiaries: JV Minnesota One, Inc. ("JV Minnesota"); MOA Investors I, Inc., ("MOA Investors"); and M.O.A. Enterprises, Inc. ("MOA Enterprises"). Defendant Triple Five of Minnesota, Inc. ("Triple Five") and Defendant Si-Minn Developers Limited Partnership ("Si-Minn Developers") are partners in both Defendant Mall of America Associates ("MOAA") and Defendant Minntertainment Associates ("MA"). JV Minnesota and MOAA are members of MOA JV Property, LLC ("JV Property"). MOA Investors and MOAA are members of Mall of America Investment, LLC ("Mall Investment"). MOA Enterprises and MA are members of MOA Enterprises Property, LLC ("Enterprises Property").[1]

MOAC Limited Partnership ("MOAC") is a limited partnership that owns 99% of the Mall of America. It is comprised of three entities: MOAA, JV Property, and Mall Investment. Minntertainment Company, which owns 100% of the entertainment portion of the Mall, is a general partnership composed of MA and Enterprises Property. The following charts represent the relationships of the entities involved in this action.

---

[1] In its Answer, Counterclaim, and Cross-Claims, Triple Five identifies JV Property, Mall Investment, and Enterprises Property as cross-defendants. However, Plaintiffs did not name these entities as defendants. Thus, the entities cannot be cross-defendants.





**B.     Present Offer**

TIAA wants either to own 99% of the Mall, including 100% of the entertainment portion of the Mall, or to have its wholly-owned subsidiaries divested of all ownership interests in the Mall. To that end, on March 14, 2006, TIAA made offers to purchase the assets of MOAC and Minntertainment Company. The wholly-owned subsidiaries of TIAA, acting for and through JV Property, Mall Investment, and Enterprises Property, recommend that MOAA and MA accept the offers.

> The governing partnership agreements contain shotgun buy-sell provisions, which state:
>
> If . . . any Partner shall receive a bona fide offer to purchase the assets of the Partnership, and if such Partner desires that the Partnership accept such offer, such Partner shall give notice of such offer to the other Partners . . . . The other Partners shall have 120 days from the date of the giving of such notice either (i) to approve the sale to the third party, in which event the sale shall be closed pursuant to the terms of the offer, or (ii) to agree to purchase in proportion to their Shares the interest of the initiating Partner in the Partnership at the purchase price equal to the amount which (as confirmed or adjusted by the Partnership Accountants as aforesaid) would be distributed upon liquidated as described above to the initiating Partner (in which case the other Partners shall purchase and the initiating Partner will sell the initiating Partner's interest at such price). Failure of the other Partners to agree to approve the sale or purchase the initiating Partner's interest in the Partnership pursuant to the immediately preceding sentence shall be deemed to constitute approval of the sale to the third party.

Thus, MOAA and MA have 120 days, or until July 13, 2006, to approve the sale to TIAA or to agree to purchase the partnership interests of JV Property, Mall Investment, and Enterprises Property at a price equal to the offering price. Failure of MOAA and MA to agree to approve the sale or to purchase within 120 days is deemed to constitute approval of the sale to TIAA.

**C.      Injunctive Relief in <u>Triple Five</u> and the Commencement of this Action**

In its December 23, 2005 Memorandum and Order, this Court issued an injunction prohibiting Si-Minn Developers "from using a shotgun buy-sell provisions to purchase, acquire, or obtain any further actual or beneficial interest — direct or indirect — in the Mall, including the entertainment portion of the Mall or any Mall-related entertainment entities." (Dec. 23, 2005 Order at 16.) The Court issued the injunction after validating Triple Five's concerns that Simon Property Group would scheme with TIAA to use the shotgun buy-sell provision as a means to seize control of the Mall.[2] (<u>Id.</u> at 15.)

On March 15, 2006, Plaintiffs filed a Complaint for Declaratory Judgment, requesting that the Court decide whether the December 2005 Order precludes MOAA and MA from purchasing the partnership interests of JV Property, Mall Investment, and Enterprises Property. Triple Five then filed cross-claims and counter-claims, seeking a ruling on whether Si-Minn Developers may share in the potential increased ownership of the Mall. Plaintiffs have filed a Motion for Summary Judgment, which is scheduled for hearing on September 7, 2006, to address these issues.

---

[2] Simon Property Group is an umbrella partnership real estate investment trust controlled by Simon family members. Likewise, Simon family members are limited partners in Si-Minn Developers. <u>Triple Five</u> arose from an attempt by Simon Property Group to buy a 27.5% interest in MOAC and Minntertainment Company. As the parties are well aware, the Court found that Simon Property Group and Si-Minn Developers, as well as various other entities associated with the Simon family, had brazenly breached their fiduciary duties by concealing the negotiations relating to the 1999 purchase transaction, by failing to disclose the material terms of the transaction to Triple Five, and by usurping a partnership opportunity.

In the present Motion, Triple Five requests that the Court (1) toll the 120-day buy-sell provision pending resolution of all issues raised in this action, (2) order that a further 60-day evaluation period start upon final resolution of the action, and (3) order that TIAA keep open and valid its offers until expiration of the 60-day evaluation period. MOAA and MA have requested that the Court grant the Motion. Plaintiffs have agreed to extend the evaluation period to the summary judgment hearing date, but have requested that the Court then decide whether an additional thirty-day extension is appropriate.

**DISCUSSION**

The parties agree that Triple Five's Motion essentially seeks a preliminary injunction. Injunctive relief is considered to be an extraordinary remedy that is not to be routinely granted. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted). However, "a preliminary injunction may issue if the movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Accordingly, the Court will issue a preliminary injunction if the moving party demonstrates that: (1) the moving party will suffer irreparable harm absent the injunction, (2) the moving party will likely succeed on the merits, (3) the balance of harms favors the moving party, and (4) the public interest favors the issuance of an injunction. Id.

**A.     Irreparable Harm**

Expiration of the evaluation period on July 13, 2006 would result in irreparable harm to MOAA and MA, as well as their constituent partners. The injunction imposed by the

6

December 2005 Order arguably precludes MOAA and MA from acquiring the interests at stake. Consequently, absent the tolling of the 120-day evaluation period, MOAA and MA face a conundrum. If, on one hand, MOAA and MA exercise their rights to purchase the interests pursuant to the shotgun buy-sell provisions, they risk violating the December 2005 Order and may face contempt charges. On the other hand, MOAA and MA face a deadline that will force them to sell their interests within a week. A forced sale of their interests in the Mall would irreparably harm both both MOAA and MA, as well as the partners who compose those entities. The Court will not place MOAA and MA in such a precarious position. It will not deprive MOAA and MA of the opportunity to purchase the Mall interests and simultaneously force MOAA and MA to sell their interests.

Plaintiffs argue that MOAA and MA may decide whether to buy or sell the interests at stake without violating the December 2005 Order. Similarly, Si-Minn Developers submits that Triple Five has all information necessary to determine whether the purchase offer is reasonable. The Court disagrees for several reasons. First, the December 2005 Order arguably prohibits MOAA and MA from purchasing the interests. Second, MOAA and MA cannot simply buy the interests and sort out the details later. Before MOAA and MA can make a reasonable determination of whether to accept the offer, the Court must first determine whether and how MOAA and MA may buy the interests. Third, financing for a purchase cannot be arranged until the Court determines the conditions under which a purchase by MOAA and MA may take place. Until the Court rules, a lender cannot determine ownership interests in

the Mall, how to structure the loan, or whether multiple loans will be necessary.[3] MOAA and MA, and their constituent partners, have taken tremendous risks and committed enormous resources to the Mall. Denying MOAA and MA the right to make the fundamental and consequential decision to buy or sell the interests at stake certainly constitutes irreparable harm.

B.   **Likelihood of Success**

The partnership agreements allow MOAA and MA to purchase the interests at issue. However, the December 2005 Order prohibits Si-Minn Developers, a partner of both MOAA and MA, from using the shotgun buy-sell provisions to acquire any further actual or beneficial interest — direct or indirect — in the Mall. Recognizing this, Triple Five has cross-claimed to determine whether Triple Five may acquire the interests while precluding Si-Minn Developers from increasing their ownership in the Mall. Based on the language of both the agreements and injunction, Triple Five has met its burden of showing a likelihood of success on its cross-claims.

C.   **Balance of Harms**

Plaintiffs advance three arguments in support of a finding that they will be irreparably harmed if the evaluation period is extended. First, they contend that market fluctuations may

---

[3] Plaintiffs and Si-Minn Developers both argue that lenders could issue commitments to MOAA and MA even if the Court has not yet ruled on outstanding issues. However, Martin H. Walrath, the Vice President of Corporate Finance for Triple Five, averred that lenders will not commit to lending terms to allow MOAA and MA to purchase the interests at stake. (Walrath Aff. ¶ 4.)

cause the value of the Mall to change, thereby forcing TIAA to purchase the interests at a unfair price or allowing MOAA and MA to purchase the assets at a windfall price. This purported harm is speculative. Indeed, the market is just as likely to fluctuate in TIAA's favor.

Second, Plaintiffs argue that if TIAA ultimately purchases the interests, it will have been denied the ability to control, manage, and develop the Mall during the tolling period. Finally, Plaintiffs maintain that TIAA will suffer opportunity costs on its capital tied up in the Mall if MOAA and MA ultimately purchase the interests at stake. This supposed damage is based on an assumption that the claims at issue will result in protracted litigation. The Court will likely address all outstanding issues when deciding Plaintiffs' Motion for Summary Judgment. Thus, the disputes will be resolved shortly after the September 7, 2006 hearing. At worst, Plaintiffs face a short delay in consummation of the purchase or sale of the interests. Allowing the parties to capture the whole picture greatly outweighs the harm Plaintiffs may suffer by extending the evaluation period.

**D.     Public Interest**

Rarely does the public interest play a pivotal role in deciding whether to grant a preliminary injunction. However, this case is an exception. Because the Mall is such a significant landmark in the State of Minnesota, both the state and local communities have a stake in the Mall's economic success. And because the party controlling the Mall and its future development will largely determine that success, allowing all parties to decide the ownership question in a fair and informed manner serves the public interest.

Plaintiffs contend that the public will suffer irreparable harm if the 120-day period is extended because of the uncertainty as to who will ultimately owned the Mall. This, according to Plaintiffs, will injure both the economic value of the Mall and its value as a public institution. The Court rejects this argument, as it is based on speculation. Moreover, a rash decision regarding Mall ownership is more likely to harm the economic value and goodwill of the Mall.

Finally, while the public has an interest in seeing contractual rights enforced, it also has an interest in adherence to court orders. The most prudent manner to resolve this dispute is to toll the evaluation period until the Court determines whether and how MOAA and MA may purchase the interests at stake.

**CONCLUSION**

Maintaining the status quo until the Court determines whether MOAA and MA may acquire the interests at stake is appropriate under the circumstances of this case. The Court is cognizant of the importance in ruling on the issues raised in this action and will ensure that a timely decision is rendered. In the meantime, the Court will toll the 120-day buy-sell evaluation period until the Court renders a decision in the upcoming Motion for Summary Judgment. Accordingly, **IT IS HEREBY ORDERED** that:

1. Triple Five of Minnesota, Inc.'s Motion to Toll the 120-Day "Buy-Sell" Evaluation Period (Docket No. 30) is **GRANTED in part** as to the merits but **DENIED in part** as to the time requested;

2. The offers that TIAA has presented to purchase the assets of MOAC and Minntertainment Company will remain in force and effect until the Court rules on the pending Motion for Summary Judgment;

3. Upon ruling on the Motion for Summary Judgment, the Court will determine whether to extend further the evaluation period.

Dated: July 7, 2006

                                              s/ Paul A. Magnuson
                                              Paul A. Magnuson
                                              United States District Court Judge